[Cite as *Gombash v. Westbrook*, 2023-Ohio-572.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| BREANNA GOMBASH,<br><br>    Plaintiff-Appellant,<br><br>- vs -<br><br>JOSEPH WESTBROOK,<br><br>    Defendant-Appellee. | CASE NO. 2022-T-0070<br><br>Civil Appeal from the<br>Court of Common Pleas,<br>Juvenile Division<br><br>Trial Court No. 2014 JS 00533 |

## O P I N I O N

Decided: February 27, 2023
Judgment: Affirmed

*James E. Lanzo*, 4126 Youngstown-Poland Road, Youngstown, OH 44514 (For Plaintiff-Appellant).

*John Ams*, 134 Westchester Drive, Youngstown, OH 44515 (For Defendant-Appellee).

*Paul C. Conn*, 8090 Market Street, Suite B-1, Boardman, OH 44512 (Guardian Ad Litem).

MARY JANE TRAPP, J.

{¶1}    Appellant, Breanna Gombash ("Ms. Gombash"), appeals the judgment of the Trumbull County Court of Common Pleas, Juvenile Division, that overruled her objections to the magistrate's decisions, adopted the magistrate's decision, and awarded legal custody of the parties' two minor children to their father, appellee Joseph Westbrook ("Mr. Westbrook").

{¶2}    Ms. Gombash asserts one assignment of error, contending that the trial court abused its discretion by finding that it was in the children's best interest to award

legal custody to Mr. Westbrook because its finding was not supported by a substantial amount of credible and competent evidence.

{¶3} After a careful review of the record and pertinent law, we find that the trial court's "best interest" findings are supported by substantial credible, competent evidence. Therefore, the trial court did not abuse its discretion in awarding legal custody of the children to Mr. Westbrook, and we affirm the judgment of the Trumbull County Court of Common Pleas, Juvenile Division.

## Substantive and Procedural History

{¶4} This appeal concerns the two minor children of Ms. Gombash and Mr. Westbrook who were born outside of marriage in 2013 and 2015, respectively.

{¶5} The parties met approximately ten years ago at a truck stop. Mr. Westbrook was in his mid-thirties and working as a truck driver. Ms. Gombash was 16, although she told Mr. Westbrook that she was older. According to Mr. Westbrook, the FBI contacted him by phone and informed him that Ms. Gombash was a teenager who had run away from home. He subsequently met up with Ms. Gombash's mother, Melissa Gregory ("Mrs. Gregory"), who took custody of Ms. Gombash.

{¶6} For the next two years, Ms. Gombash and Mr. Westbrook lived at the home of Mrs. Gregory and her husband, William Gregory ("Mr. Gregory"). The parties' first child was born during this time period. In 2015, Mr. Westbrook was convicted of a felony offense of evading arrest in a motor vehicle and served 11 months in prison. The parties' second child was born during Mr. Westbrook's incarceration. After being released on parole, Mr. Westbrook moved into a halfway house in Texas.

{¶7} In 2016, the parties and their children lived together in Texas. Three months later, Ms. Gombash and Mr. Westbrook got into an argument. Ms. Gombash called the

2

police and reported that Mr. Westbrook had assaulted her. He was arrested and served 30 days in jail. According to Mr. Westbrook, he was subsequently released without being criminally charged.

{¶8} After Mr. Westbrook's release, the parties lived separately at various residences in Texas. Ms. Gombash had custody of the children. On one occasion, Mr. Westbrook drove to Houston to visit Ms. Gombash. The couple was pulled over while Ms. Gombash was driving, and Mr. Westbrook was arrested for failing to report. He subsequently served 72 days in jail.

{¶9} In 2017, Mr. Westbrook met his wife, and they moved to Elk City, Oklahoma. They currently rent a home and operate their own trucking business.

{¶10} Meanwhile, Ms. Gombash and the children moved to North Dakota. She lived with her sister for a few months and then moved into her own townhouse. She became engaged, and she and the children moved to Tennessee. After ending the engagement, she and the children moved back to North Dakota.

{¶11} In 2018, Ms. Gombash brought the children to stay with Mr. Westbrook and his wife in Oklahoma. The parties dispute the underlying circumstances. According to Mr. Westbrook, Ms. Gombash "could not take it anymore" and left the children for him and his wife to raise while she "figured her life out." When the children arrived, they were "dirty" and accompanied by two large garbage bags full of dirty clothing. Mr. Westbrook bought them new clothes, and they had a "marvelous" time together. After three and a half weeks, Ms. Gombash arrived at the residence when she knew Mr. Westbrook was not present and took the children.

{¶12} According to Ms. Gombash, however, she left the children with Mr. Westbrook temporarily so that she could obtain treatment for a blood clot in her liver. She

3

denied that the children or their clothing were "dirty." She attempted to call the children every day while they were in Oklahoma. When Mr. Westbrook and his wife stopped answering her calls, Ms. Gombash drove to Oklahoma and retrieved the children.

{¶13} In 2020, Ms. Gombash and the children moved into Mr. and Mrs. Gregory's home in Hubbard, Ohio. On one occasion, Ms. Gombash and the Gregorys had an argument involving Ms. Gombash allegedly kicking her son. While arguing with Mr. Gregory, Ms. Gombash held a knife in her hand. This resulted in Mrs. Gregory calling the police and children's services and in Ms. Gombash being arrested. According to Mr. Gregory, he asked the prosecutor to consider reducing the charges against Ms. Gombash because she was "stressed." She ultimately pleaded guilty to disorderly conduct and was sentenced to two years of probation.

{¶14} At the time of her arrest, Ms. Gombash was in possession of marijuana and was required to complete a drug program. She has since obtained a medical marijuana card, which she purportedly uses to treat chronic back pain from prior car accidents.

{¶15} In 2021, Ms. Gombash purchased a house in Masury, Ohio, for $7,000 that requires extensive repairs. Ms. Gombash works for Door Dash and receives financial assistance from the Gregorys and other family members.

{¶16} The parties do not dispute that there has never been a court order in place obligating Mr. Westbrook to pay child support. According to Mr. Westbrook, he gave Ms. Gombash money "every time" he knew where she and the children were living. According to Ms. Gombash, however, she attempted to establish child support orders in Ohio and other states, but Mr. Westbrook could not be located.

{¶17} The parties also disagree about the frequency of Mr. Westbrook's visits with the children following their Oklahoma visit. According to Mr. Westbrook, he began driving

4

to Ohio every other weekend. According to Mr. Gregory and Ms. Gombash, however, Mr. Westbrook only visited the children a few times.

{¶18} In June 2021, Mr. Westbrook, through counsel, filed a complaint in the trial court for custody of the parties' children. Ms. Gombash appeared through counsel and filed a brief in opposition to Mr. Westbrook's complaint and a motion to allocate parental rights and responsibilities, including child support.

{¶19} The trial court appointed Attorney Paul Conn as the guardian ad litem ("GAL") for the children. He subsequently filed reports in October 2021 and February 2022. In his second report, the GAL recommended that the children be placed in Mr. Westbrook's custody. He wrote that while both parties have pasts that question their suitability, Mr. Westbrook currently offers greater stability for the children.

{¶20} In February 2022, the matter was tried to the magistrate. Mr. Westbrook presented his own testimony. Ms. Gombash presented her own testimony and testimony from Mr. and Mrs. Gregory. The GAL also testified. Following the presentation of evidence, the magistrate granted Ms. Gombash's motion for an in-chambers interview of the children, which took place in March 2022.

{¶21} In April 2022, the magistrate filed a decision setting forth its factual findings and determined, "based upon the testimony presented to the court, the recommendation of [the GAL], and an overall analysis of the factors set forth in [R.C.] 3109.04(F)(1)(a) through (j)," that it was in the best interest of the parties' children to be placed in the legal custody of Mr. Westbrook. The magistrate further determined that Ms. Gombash should have companionship with the children as the parties agree, but not less than the trial court's standard guidelines for long-distance companionship.

5

**{¶22}** On the same day, the trial court filed a judgment entry adopting the magistrate's decision as the order of the court.

**{¶23}** Ms. Gombash filed objections to the magistrate's decision along with a transcript of the trial proceedings. In June 2022, the trial court filed a judgment entry in which it overruled Ms. Gombash's objections, reaffirmed the magistrate's decision, and awarded legal custody of the children to Mr. Westbrook.

**{¶24}** Ms. Gombash appealed and asserts the following assignment of error:

**{¶25}** "The trial court abused its discretion by finding that it was in the children's best interests to be placed in the custody of their father as its finding is not supported by a substantial amount of credible and competent evidence."

### Standard of Review

**{¶26}** "[C]ustody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence before him or her[,] * * * and such a decision must not be reversed absent an abuse of discretion." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). An abuse of discretion is the "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

**{¶27}** The Supreme Court of Ohio has held that "'[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal * * *.'" *Davis* at 419, quoting *Seasons Coal*

6

Case No. 2022-T-0070

*Co. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984). "This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does *not* translate to the record well." (Emphasis sic.) *Id.*; *see Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988) ("The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.") Thus, "'[w]here an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court.'" *Davis* at 418, quoting *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 550 N.E.2d 178 (1990), syllabus.

## Law and Analysis

{¶28} The trial court proceeded pursuant to R.C. 3109.04, which provides, in relevant part, that "[w]hen making the allocation of the parental rights and responsibilities for the care of the children * * * in an original proceeding * * *, the court shall take into account that which would be in the best interest of the children." R.C. 3109.04(B)(1). "In determining the best interest of a child * * *, the court shall consider all relevant factors, including, but not limited to," those set forth in subsections (a) through (j) of R.C. 3109.04(F)(1).

{¶29} In her sole assignment of error, Ms. Gombash challenges several of the trial court's "best interest" findings.

### The Parents' Wishes

{¶30} R.C. 3109.04(F)(1)(a) requires the trial court to consider "[t]he wishes of the child's parents regarding the child's care[.]"

7

Case No. 2022-T-0070

{¶31} The trial court found that both parents wanted sole custody of their children and that neither party filed a proposed shared parenting plan. Ms. Gombash does not challenge these findings on appeal.

### *The Children's Wishes*

{¶32} R.C. 3109.04(F)(1)(b) states that "[i]f the court has interviewed the child in chambers pursuant to [R.C. 3109.04(B)] regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child," then the trial court is required to consider "the wishes and concerns of the child, as expressed to the court * * * [.]"

{¶33} The trial court stated that it conducted an in camera interview of both children. It found that "neither minor child possesses sufficient reasoning ability to express their wishes/concerns" and that "[b]oth minor children appear to be cognitively delayed."

{¶34} Ms. Gombash contends that the trial court failed to consider the fact that the children expressly informed the GAL on two occasions that they wished to live with her. However, Ms. Gombash's argument misconstrues the applicable statutory provisions. Subsection (b) refers to the "wishes and concerns of the child, *as expressed to the court*" during an in chambers interview, not out-of-court statements the children purportedly made to the GAL. (Emphasis added.) R.C. 3109.04(F)(1)(b).

{¶35} Further, R.C. 3109.04(B)(2)(b) provides that during the in-chambers interview, "[t]he court first shall determine the reasoning ability of the child. If the court determines that the child does not have sufficient reasoning ability to express the child's wishes and concern[s] with respect to the allocation of parental rights and responsibilities

8

for the care of the child, *it shall not determine the child's wishes and concerns with respect to the allocation*." (Emphasis added.)

**{¶36}** Here, the trial court expressly determined that "neither minor child possesses sufficient reasoning ability to express their wishes/concerns in any meaningful way." Thus, there was no legal basis for the trial court to determine the children's wishes and concerns.

**{¶37}** Ms. Gombash also contends that the trial court improperly stated, without an expert evaluation, that both children "appear cognitively delayed." However, the trial court made this statement following its determination that the children did not possess sufficient reasoning ability. The trial court's use of the word "appear" suggests a personal observation rather than a purported medical diagnosis.

### *The Children's Interactions and Interrelationships*

**{¶38}** R.C. 3109.04(F)(1)(c) requires the trial court to consider "[t]he child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest[.]"

**{¶39}** The trial court found that the children have had "limited interaction" with Mr. Westbrook but that their interaction with him in Oklahoma was "positive." On the other hand, Ms. Gombash "appears to have had significant 'issues' with all of her close family members," including one of her children. Specifically, it found that Ms. Gombash dropped off the children in Oklahoma "after she apparently had to leave her sister's residence in North Dakota"; that Ms. Gombash was investigated by children's services after an incident involving one of the children that Mrs. Gregory reported; and that Ms. Gombash was arrested after an incident with Mr. Gregory.

9

**{¶40}** The trial court noted that the parties met when Ms. Gombash was a "16-year-old runaway" and that Mr. Westbrook has been incarcerated. However, it found that Mr. Westbrook "appears to now be living in a very stable situation." By contrast, Ms. Gombash is "still relying heavily" on Mr. and Mrs. Gregory, and "more time is needed to address whether she has truly repaired her relationship with" them. The trial court stated that the children "need to have some degree of stability in their lives."

**{¶41}** Ms. Gombash cites portions of trial testimony involving the children's interactions with the Gregorys and an uncle but does not appear to challenge the trial court's express findings.

### The Children's Adjustment

**{¶42}** R.C. 3109.04(F)(1)(d) requires the trial court to consider "[t]he child's adjustment to the child's home, school, and community[.]"

**{¶43}** The trial court found that the children never had an opportunity to establish roots and adjust to a home, school, or community while in Ms. Gombash's custody, while Mr. Westbrook appeared to give them the "best chance to establish roots in a community."

**{¶44}** Ms. Gombash objects to this finding, contending that the trial court ignored the fact that she has "a mortgage free home that she owns," which would give the children the same opportunity to establish roots as they would have at Mr. Westbrook's home.

**{¶45}** The trial court did not ignore Ms. Gombash's home ownership; rather, it discussed that fact in its findings under subsection (j). Specifically, the trial court found that both parents "have moved frequently during the short lives of their minor children" but that Mr. Westbrook "now appears to have established a home and a business in Oklahoma." It found that Ms. Gombash "has just purchased a 'fixer upper' in Masury, Ohio" but "appears to be relying heavily on [Mr. and Mrs. Gregory] to make this home

10

habitable." In addition, "the minor children are spending a great deal of time at [Mrs. Gregory's] residence in Hubbard, Ohio." Thus, in light of other evidence in the record, Ms. Gombash's home ownership, by itself, did not compel the conclusion that the parties' living situations were equivalent.

### *Mental and Physical Health*

{¶46} R.C. 3109.04(F)(1)(e) requires the trial court to consider "[t]he mental and physical health of all persons involved in the situation[.]"

{¶47} The trial court stated that it has "no concerns as to [Mr. Westbrook's] mental or physical health" but that it "does have concerns as to [Ms. Gombash's] mental health." It found that Ms. Gombash "now has a medical marijuana card for back pain from a car accident" and "had some sort of physical issue in North Dakota when she dropped off the children to [Mr. Westbrook] in Oklahoma for three (3) weeks in 2018 or 2019." In addition, when Ms. Gombash was arrested for the incident involving Mr. Gregory, "she had marijuana in her possession. She then went and obtained a medical marijuana card to essentially legitimize her use of marijuana." It further found that Ms. Gombash "has also been diagnosed with anxiety issues" and that one of the children has "been diagnosed with ADHD."

{¶48} Ms. Gombash objects to the trial court's statement that she obtained her medical marijuana card to "legitimize her marijuana use." According to Ms. Gombash, "it is clear" from her testimony that she used marijuana for her chronic back pain and previously did so without a "prescription" due to insufficient funds.

{¶49} While Ms. Gombash offered such testimony, the trial court was not required to accept it as true. This is because "the credibility of the witnesses [is] primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph

11

Case No. 2022-T-0070

one of the syllabus. "A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Fetty*, 11th Dist. Portage No. 2011-P-0091, 2012-Ohio-6127, ¶ 58.

{¶50} Ms. Gombash also contends that the trial court improperly used the occasion when she brought the children to Oklahoma as evidence of her mental health status. However, the trial court referenced that event in relation to Ms. Gombash's "physical" health, not her mental health. As stated, subsection (e) expressly requires the trial court to consider "[t]he mental and *physical* health of all persons involved in the situation." (Emphasis added.) R.C. 3109.04(F)(1)(e).

{¶51} Ms. Gombash further objects to the trial court's finding that it has no concerns about Mr. Westbrook's mental health. According to Ms. Gombash, this finding "fully discounts" Mr. Westbrook's admitted past behavior of "taking up with a sixteen-year-old runaway" and "committing no less than three felonies." As summarized above, the trial court expressly referenced Mr. Westbrook's troubling past in its findings under subsection (c) but found that he was currently living in "a very stable situation."

### Honoring Parenting Time

{¶52} R.C. 3109.04(F)(1)(f) requires the trial court to consider "[t]he parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights[.]"

{¶53} The trial court stated its belief that "both parents will honor and facilitate court-ordered companionship." According to Ms. Gombash, this finding "discounts" her testimony that she was "thwarted" in her efforts to communicate with the children during the Oklahoma visit.

12

Case No. 2022-T-0070

**{¶54}** The parties presented conflicting testimony regarding the Oklahoma visit. Therefore, Mr. Westbrook's alleged actions were not definitely established. In addition, Mr. Westbrook expressly testified that he would "honor any order" from the court regarding visitation with Ms. Gombash. Since the trial was in the best position to weigh the parties' respective credibility, we defer to its determination.

### *Child Support Orders*

**{¶55}** R.C. 3109.04(F)(1)(g) requires the trial court to consider "[w]hether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor[.]"

**{¶56}** The trial court found that there are no child support orders in effect, which it attributed to "the transient nature of both parents." Ms. Gombash concedes that the trial court's finding was "proper."

### *Criminal History*

**{¶57}** R.C. 3109.04(F)(1)(h) requires the trial court to consider "[w]hether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * * whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of [R.C. 2919.25 - domestic violence] * * * involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household

13

that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child[.]"

{¶58} The trial court found that "[b]oth parents have had violence in their past" but that Ms. Gombash's violence is "more recent" based on the incidents with one of her children and with Mr. Gregory. It further found that "[b]ased on the parties' stay in Texas, they do appear to have had a toxic relationship."

{¶59} Ms. Gombash objects to the trial court's reference to her "violent past," stating that she has never been convicted of abuse or domestic violence and that children's services made no finding of abuse in relation to the incident with one of the children.

{¶60} R.C. 3109.04(F)(1) states the trial court "shall consider all relevant factors" and provides a non-exhaustive list. *Wright v. Wright*, 11th Dist. Geauga No. 2017-G-0118, 2018-Ohio-1451, ¶ 10. Thus, the court may consider *any other* relevant factors in determining the best interest of the children. *Id.* at ¶ 11. While Ms. Gombash ultimately pleaded guilty to a reduced charge, the incidents with her child and the Gregorys are indicative of domestic violence and merited the trial court's consideration.

### *Shared Parenting*

{¶61} R.C. 3109.04(F)(1)(i) requires the trial court to consider "[w]hether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court[.]"

{¶62} The trial court found that there was never a shared parenting order in effect. Ms. Gombash does not challenge this finding on appeal.

14

Case No. 2022-T-0070

### Out-of-state Residence

**{¶63}** Finally, R.C. 3109.04(F)(1)(j) requires the trial court to consider "[w]hether either parent has established a residence, or is planning to establish a residence, outside this state."

**{¶64}** The trial court's findings under subsection (j) are summarized above. Ms. Gombash contends that the trial court "utterly discount[ed]" the fact that Mr. Westbrook is an Oklahoma resident.

**{¶65}** It appears the trial court did not weigh Mr. Westbrook's Oklahoma residency as a negative factor. However, it also appears the trial court anticipates these types of scenarios in child custody matters. As stated, the trial court has adopted a "long-distance parenting time schedule" as part of its standard parenting and companionship guidelines and expressly incorporated it into its custody order in this case.

**{¶66}** In addition, this court has recognized that depending on the facts before the trial court, all of the "best interest" factors may not carry the same weight or have the same relevance. *Wright* at ¶ 11. The trial court has discretion to determine which factors under R.C. 3109.04(F)(1) are relevant. *Id.* Here, the evidence indicates that Ms. Gombash has lived in multiple states within the last five years, while Mr. Westbrook has maintained a stable residence in Oklahoma. Since the trial court's stated concern was providing stability to the children, we cannot say the trial court abused its discretion in this regard.

**{¶67}** In sum, the record demonstrates that the trial court carefully considered each of the factors set forth in R.C. 3109.04(F)(1)(a) through (j) in determining the children's best interest. It appears the trial court's custody decision was primarily based on its determination that Mr. Westbrook is in a better position to provide the children with

15

the stability that they need and deserve. Because the trial court's findings are supported by substantial credible and competent evidence, we conclude that the trial court did not abuse its discretion in awarding legal custody of the children to Mr. Westbrook.

{¶68} Ms. Gombash's sole assignment of error is without merit.

{¶69} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, Juvenile Division, is affirmed.


JOHN J. EKLUND, P.J.,

MATT LYNCH, J.,

concur.

Case No. 2022-T-0070