[Cite as *In re G.E.H.*, 2024-Ohio-5056.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

IN THE MATTER OF:

G.E.H., DEPENDENT CHILD

**CASE NO. 2024-P-0017**

Civil Appeal from the
Court of Common Pleas,
Juvenile Division

Trial Court No. 2023 JCC 00087

**O P I N I O N**

Decided: October 21, 2024
Judgment: Affirmed

*Judith M. Kowalski*, 333 Babbitt Road, Suite 323, Euclid, OH 44123 (For Plaintiff-Appellant).

*Lindsay L. Moretta* and *Corinne Hoover*, Hoover Kacyon, LLC, 527 Portage Trail, Cuyahoga Falls, OH 44221 (For Defendant-Appellee).

ROBERT J. PATTON, J.

{¶1} Appellant, Melissa Selman, ("Mother") appeals the judgment of the Portage County Court of Common Pleas, Juvenile Division, overruling her objections to a magistrate's decision that terminated the parties' shared parenting plan and named appellee, Donald Tynes, ("Father") the residential parent and legal custodian of the parties' child.

{¶2} After a careful review of the record and pertinent law, we find that the trial court's "best interest" findings are supported by substantial credible, competent evidence. Therefore, the trial court did not abuse its discretion in awarding legal custody of the

children to Father, and the award is consistent with the weight of the evidence. The judgment of the Portage County Court of Common Pleas, Juvenile Division, is affirmed.

{¶3} This appeal concerns the minor child of Mother and Father, G.E.H. (dob 10/03/2021), born outside marriage. Parental rights were established in a separate Summit County case which established parental rights and ordered shared custody. Prior to removal, G.E.H. was residing with Mother.

{¶4} On March 8, 2023, a complaint was filed by Portage County Department of Job and Family Services ("PCJFS") seeking temporary custody of G.E.H. along with a motion for a predispositional order of interim custody of the child. G.E.H. was removed from Mother's home on March 7, 2023, after Mother was taken to the hospital after breaking dishes and taking prescription medications in excess of her prescribed dosage. Father indicated he was unaware of the incident with Mother or of G.E.H's removal until the police informed him of the reported incident and notified him of the date of the initial hearing. The trial court determined G.E.H. to be a dependent child and subsequently granted the motion for interim custody to PCJFS. A Guardian Ad Litem ("GAL") was appointed to protect the interest of G.E.H. on March 10, 2023.

{¶5} On March 30, 2023, Father filed a motion for temporary custody and requested immediate placement of GEH with Father. In the alternative, Father requested an expedited hearing. Father alleged in his motion that he completed his parenting classes, provided a clean drug screening, and had appropriate housing. He asserted that placement with him was in the best interest of the child. The parties stipulated that it was

2

in the best interest of the child to be placed in temporary custody of Father with an interim order of protective supervision granted to PCJFS on April 18, 2023.[1]

{¶6} On April 23, 2023, Father filed a motion for legal custody and termination of protective supervision. On May 1, 2023, Mother filed a similar request.

{¶7} On October 19, 2023, Mother filed a request to amend the case plan to include a court order requiring Father to undergo a complete mental health psychiatric examination and in-person parenting classes. The motion also sought an order prohibiting Father's mother and sister from babysitting and/or watching G.E.H or in the alternative, requiring supervised visitation. Father opposed the motion.

{¶8} On November 21, 2023, a hearing was held before the magistrate on the following motions: Father's motions for legal custody, Mother's motion for legal custody, Mother's motion to amend the case plan, and Father's motion to strike the Mother's motion to amend the case plan. During the hearing, four witnesses testified: 1). Alexandra Ross ("Ross"), the caseworker from PCJFS; 2). Andrea Ellis ("Ellis"), the Court Appointed Special Advocate ("CASA") volunteer; 3). Father; and 4). Mother. Seven exhibits were presented.

{¶9} Both Ross and Ellis recommended that Father be granted legal custody and be the decision-maker for G.E.H. and that Mother and Father have 50/50 shared parenting. Father testified that G.E.H. is doing well in his care and that she is making progress with her developmental delays. Mother expressed concerns that Father was not adequately caring for the child, and felt she was more experienced as a parent. Ellis,

---

1. According to the record, there is an ongoing custody dispute between the parties in the Summit County Domestic Relations Court.

3

Case No. 2024-P-0017

Ross, and Father each expressed concern with Mother's ability to co-parent without conflict. The testimony offered to support this concern included the following: Mother repeatedly questioned Father's abilities in text messages and sent numerous messages through the Our Family Wizard app, a system used to monitor messages between the parties. Mother placed calls to law enforcement for welfare checks while G.E.H. was in Father's care. Mother also admitted that she followed Father home after a parenting exchange. Mother expressed concerns over bruising on the toddler as well as the bathing and sleeping routines of the child while with Father. The reports by Mother were investigated and neither CASA, PCJFS, or law enforcement expressed any concern for the welfare of the child while in Father's care. Mother continued to raise Father's past legal issues which were over a decade old and continued to allege that Father could not adequately care for G.E.H. due to his cerebral palsy. She also continued to raise Father's medical marijuana usage as a reason Father could not properly care for G.E.H.[2]

{¶10} At the hearing, Mother expressed concern about Father's medical marijuana usage, his cerebral palsy, and his prior criminal history. Mother also alleged that Father's sister was on probation for a drug related offense.

{¶11} At the conclusion of the hearing, while hopeful that Mother and Father would be able to co-parent, the magistrate felt that Mother and Father could not agree and struggled to communicate. The magistrate determined that shared parenting was not an option, and that one parent should be the decisionmaker for G.E.H.

---

2. At oral arguments, there was a discussion regarding Father's usage of medical marijuana and the means of ingestion. The record indicates that Father uses the recommended medical marijuana by way of vaping apparatus and that Father vapes outside of the residence.

Case No. 2024-P-0017

{¶12} On December 4, 2023, a magistrate's decision was filed denying Mother's motion for legal custody and her motion to amend the case plan. The trial court subsequently granted the Father's motion for legal custody, in part. The magistrate concluded that "Mother and Father will each have family time with the minor child equally." The decision left the current family time schedule in effect until a later hearing on family time.[3] Father's motion to strike and request for attorney's fees was also denied.

{¶13} On December 5, 2023, the trial court adopted the magistrate's decision in a terse, one line entry. Mother filed her objections to the magistrate's decision on December 14, 2023. She filed a memorandum in support of her objections on February 8, 2024. Mother alleged that the decision was against the manifest weight of the evidence and contrary to the best interests of the G.E.H. Mother alleged three main errors: the magistrate failed to admit and consider the criminal records of Father and his family, Father and PCJFS failed to respond to requests for discovery, and PCJFS failed to provide information on Father's completion of his case plan objectives.

{¶14} Father filed a brief in response to Mother's objections and a motion to strike pursuant to Civ.R. 12(F).

{¶15} On March 12, 2024, the trial court filed a judgment entry adopting the magistrate's decision without modification, finding it in the best interest of G.E.H. to be placed in legal custody of Father. The trial court also overruled Mother's objections to the magistrate's decision and found no error in the magistrate's conclusions. Specifically, the trial court concluded that Father's criminal history and the criminal histories of his relatives were presented during the hearing and testimony was permitted in regards to the Father's

---

3. A parenting/family time schedule was prepared and filed with the Court on December 14, 2023.

Case No. 2024-P-0017

criminal history and those of his mother and sister. The trial court also found no evidence that documents were offered by either Father or PCJFS that were not shared during discovery. Lastly, the court below determined that Mother "failed to establish that it is not in the best interest of [G.E.H.] to be placed in the legal custody of Father" or otherwise demonstrate that the magistrate's decision was unsupported by the record or erroneous. Dkt. 94, p. 6.

{¶16} Mother filed a notice of appeal on March 21, 2024.

{¶17} On April 5, 2024, this Court remanded the case to the trial court to issue a separate judgment entry regarding the trial court's ruling on legal custody.

{¶18} The record was refiled with the trial court's new entry on April 30, 2024. The entry included the following additional language: "Accordingly, Mother's Motion for Legal Custody is hereby DENIED. Furthermore, Father's Motion for Legal Custody and Termination of Protective Supervision is hereby GRANTED."

{¶19} Mother appeals and raises the following assignments of error:

[1]. "The Portage County Juvenile Court erred in finding that the preponderance of the evidence supported granting legal custody of the minor child to the father and denying mother's motion for legal custody."

[2]. "The Portage County Juvenile Court's decision to grant legal custody of the child to the father was against the manifest weight of the evidence."

{¶20} As these two assignments of error are inextricably intertwined, we address them together.

{¶21} As this Court has previously acknowledged, " 'custody issues are some of the most difficult and agonizing decisions a trial judge must make. Therefore, a trial judge must have wide latitude in considering all the evidence before him or her[,] * * * and such

6

a decision must not be reversed absent an abuse of discretion.' " *Gombash v. Westbrook*, 2023-Ohio-572 ¶ 26 (11th Dist.), quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, (1997). An abuse of discretion has been defined as the "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2010-Ohio-1900, ¶ 62 (2d Dist.), quoting Black's Law Dictionary 11 (8th Ed.Rev.2004).

{¶22} "'A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal * * *.'" *Davis* at 419, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 81 (1984). "This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does *not* translate to the record well." (Emphasis in original.) *Id*. Because the trial court is in the best position to observe the witnesses and parties, "the reviewing court ... should be guided by the presumption that the trial court's findings were indeed correct." *Matter of C.R.*, 2024-Ohio-2954, ¶ 41 (11th Dist.), quoting *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). Therefore, an award of custody will not be reversed by a reviewing court as being against the weight of the evidence, when the award is "supported by a substantial amount of credible and competent evidence" *Davis,* at 418, quoting *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus.

{¶23} R.C. 3109.04(B)(1) provides, in relevant part, that "[w]hen making the allocation of the parental rights and responsibilities for the care of the children * * * in an original proceeding * * *, the court shall take into account that which would be in the best

7

Case No. 2024-P-0017

interest of the children." "In determining the best interest of a child * * *, the court shall consider all relevant factors, including, but not limited to," those set forth in subsections (a) through (j) of R.C. 3109.04(F)(1). "This list is nonexclusive as the trial court is not limited to the statutory factors. * * * Though there should be some indication in the judgment entry that the trial court considered the best interests of the child pursuant to R.C. 3109.04(F), there is no requirement it make specific findings in its entry as to each and every factor." *Molzon v. Molzon*, 2022-Ohio-1634, ¶ 70 (11th Dist.).

**{¶24}** Although the magistrate's decision does not expressly address each of the specific R.C. 3109.04(F) factors, a plain reading of the decision reveals the magistrate considered all of the factors. *Id.*

**{¶25}** Both Mother and Father expressed their wishes regarding custody and the child's care. Both Mother and Father believed they should have legal custody. R.C. 3109.04(F)(1)(a). Father expressed that he never intended to seek sole custody and always envisioned shared parenting. Father also testified that he felt it was important that G.E.H. have her mother in her life and indicated that if awarded custody he would consult Mother on decisions.

**{¶26}** Prior to removal, G.E.H. was living with Mother. Mother had abused her prescription drugs and broke plates while G.E.H. was in the residence. A case plan was developed, and both parents actively pursued the case plan objectives. Due to G.E.H.'s age, she was unable to express her wishes regarding custody. R.C. 3109.04(F)(1)(b).

**{¶27}** Ellis, Ross, and both parents testified that G.E.H. is bonded with both parents and loves both parents. 3109.04(F)(1)(c). Both Mother and Father have appropriate and safe housing for the child.

8

**{¶28}** G.E.H. has some developmental delays which have resulted in a number of appointments and additional services. The magistrate noted that "[s]ince the child was placed into Father's temporary custody, she is up to date with all recommendations." Father has also reached out to Help Me Grow, and Father has indicated that he will follow any recommendations. From the testimony presented, the child is well-adjusted to the child's home. R.C. 3109.04(F)(1)(d).

**{¶29}** During the hearing, concerns were expressed by the GAL, the PCJFS caseworker, and Father regarding Mother's mental health. R.C. 3109.04(F)(1)(e). Mother completed her mental health assessment and recommendations. Mother testified she would continue receiving counseling as recommended. Despite significant progress and compliance with the case plan objectives, the GAL and caseworker both expressed concern with Mother's ability to co-parent and communicate with Father due to her behavior during the pendency of this case. R.C. 3109.04(F)(1)(f).

**{¶30}** The magistrate noted Mother sent numerous messages through Our Family Wizard but had reduced the number of messages recently. Mother also called the police twice to conduct welfare checks on the child while the child was with Father. Mother also admitted that she followed Father to his residence after exchanging the child pursuant to their visitation plan.

**{¶31}** Concerns were also raised by Mother regarding Father's cerebral palsy. Father testified that his condition does not impact his ability to care for G.E.H. Ross testified at the hearing that there is no evidence Father's cerebral palsy affects his ability to care for G.E.H.  R.C. 3109.04(F)(1)(e).

9

Case No. 2024-P-0017

{¶32} There was no testimony or evidence regarding the factors set forth in R.C. 3109.04(F)(1)(g), (i), or (j).

{¶33} While there was testimony offered regarding the criminal histories of Mother and Father, as well as Father's relatives, none of the prior convictions fell within R.C. 3109.04(F)(1)(h). Father's relatives were not caregivers or household members. Father's prior criminal history did not reflect any recent criminal convictions and consisted of offenses between ten to twenty years ago.

{¶34} As such, the magistrate did consider the applicable factors in R.C. 3109.04(F). In adopting the magistrate's decision, the trial court also noted in its entry, that it carefully considered the factors in R.C. 3109.04(F) and determined it was in the best interest of the child to be placed in the legal custody of Father.

{¶35} A review of the record supports the trial court's conclusion that it is in the best interest of G.E.H. to be placed in the legal custody of Father, with 50/50 shared parenting time.

{¶36} Based upon this evidence, we cannot conclude that the trial court abused its discretion in awarding legal custody of G.E.H. to Father and the award of custody is consistent with the weight of the evidence. As such, both of Mother's assignments of error are without merit.

{¶37} The judgment of the Portage County Court of Common Pleas, Juvenile Division, is affirmed.

EUGENE A. LUCCI, P.J.,

MARY JANE TRAPP, J.,

concur.

10

Case No. 2024-P-0017