OPINION
{¶ 1} Defendant-appellant Wayne B. Henderson ("Wayne") brings this appeal from the judgment of the Court of Common Pleas of Mercer County.
 {¶ 2} On January 26, 2001, plaintiff-appellee Kathy M. Henderson ("Kathy") filed a complaint for divorce. A final hearing was held on July 13, 2001, and the divorce was granted on November 28, 2001. Wayne appealed the entry and the matter was remanded to the trial court. On January 28, 2003, the trial court entered judgment granting the divorce. Wayne appealed that judgment to this court, which affirmed the judgment.
 {¶ 3} On July 3, 2003, Wayne filed a motion to decrease child support. A hearing was held on the matter on September 16, 2003. On October 8, 2003, the trial court reduced the child support because of a change in employment by Wayne, but imputed income to Wayne after finding him to be voluntarily underemployed. It is from this judgment that Wayne appeals and raises the following assignments of error.
The trial court erred in finding [Wayne] voluntarily andintentionally underemployed and therefore imputing income to himwhere the facts do not support such a determination.
 The trial court erred in not applying the correct amount forthe annual spousal support figure ordered by the court in thecalculation within the worksheet pursuant to statute.
 {¶ 4} In the first assignment of error, Wayne claims that the trial court erred by imputing income. The trial court has broad discretion to impute income as long as there is evidence to support the judgment. Rock v. Cabral (1993), 67 Ohio St.3d 108,616 N.E.2d 222. Imputed income is defined as follows.
Imputed income that the court or agency determines the parentwould have earned if fully employed as determined from thefollowing criteria:
 (i) The parent's prior employment experience;
 (ii) The parent's education;
 (iii)The parent's physical and mental disabilities, if any;
 (iv)The availability of employment in the geographic area inwhich the parent resides;
 (v) The prevailing wage and salary levels in the geographicarea in which the parent resides;
 (vi) The parent's special skills and training;
 (vii) Whether there is evidence that the parent has theability to earn the imputed income;
 (viii) The age and special needs of the child for whom childsupport is being calculated under this section;
 (ix) The parent's increased earning capacity because ofexperience;
 (x) Any other relevant factor.
R.C. 3119.02(C)(11)(a).
 {¶ 5} In this case, there was testimony that Wayne was hired by Haulette Manufacturing on May 20, 2002. He was terminated on May 27, 2003, for failure to report to work. The owner testified that when Wayne was hired, the general manager was told that he could pay the person taking the position a maximum of $32,000. The general manager's notes indicated that Wayne asked for $20,000, so that was what he was paid. The owner testified that Wayne was inexperienced. Based upon this testimony, the trial court imputed a salary of $32,000 to Wayne even though he actually had only earned $20,176. At no time was any evidence given that Wayne would actually receive the maximum salary or that he was aware of what the salary cap was. The testimony was that he asked for $20,000 a year and was given it. The fact that the owner had authorized the general manager to pay Wayne more does not show that Wayne voluntarily took a lower salary or that the general manager would have offered Wayne a salary of $32,000. That was just the maximum possible amount. There was no evidence that Wayne would have been paid that much if he had not asked for less.
 {¶ 6} In his job prior to taking the job with Haulette, Wayne was earning $10.00 per hour at Dollar General in Lima. This required him to drive approximately 80 miles roundtrip to go to work. Wayne was working full time and earning approximately $20,800 per year in salary. Thus, taking the job with Haulette reduced his roundtrip to approximately 6 miles while reducing his salary by less than $700 per year. After his employment with Haulette was terminated, Wayne found another job earning $9.70 per hour for approximately $20,176 per year.
 {¶ 7} The testimony of Kathy was that Wayne told her that he would only take low paying jobs so that he did not have to pay her. The testimony of Haulette's owner is that he thought Wayne's requested pay was low, but that Wayne was inexperienced. This testimony is sufficient for the trial court to find that Wayne was voluntarily underemployed. However, the trial court only looked at what Haulette's maximum possible salary for Wayne's position was. There was no evidence nor consideration given regarding the job opportunities or salary levels within Wayne's field in Mercer County. Marsh v. Marsh (1995),105 Ohio App.3d 747, 664 N.E.2d 1353. R.C.3119.01(C)(11) requires that the trial court consider certain criteria prior to imputing income. The record contains no evidence concerning the majority of these criteria, such as Wayne's education level, the availability of employment in the geographic area,[1] the prevailing wage and salary levels, Wayne's special skills and training, if any, or whether Wayne has the ability to earn the imputed income. Without evidence concerning these factors, the trial court erred by imputing income in the amount of $11,824. The first assignment of error is sustained.
 {¶ 8} In the second assignment of error, Wayne claims that the trial court erred by only including the amount of $2,500 for spousal support as part of Kathy's income. For purposes of calculating child support, gross income includes spousal support actually received. R.C. 3119.01(C)(7). The divorce decree requires Wayne to pay Kathy $500 per month for a total of $6,000 per year. However, in 2002, Wayne only paid Kathy $2,508.[2] As of July 11, 2003, Wayne paid Kathy $997 in spousal support.[3] Pursuant to an agreement, Kathy forgave the child support and spousal support arrearages and reduced the time remaining for payment of spousal support by 10 months. In exchange, Wayne signed a quit claim deed to the marital residence and gave up his right to receive payment of $14,352 for his equity in the home and excess personal property received by Kathy in the divorce settlement. This raises the question of whether the additional spousal support was "actually received." Although the spousal support was not received in cash, Kathy did receive it in the form of forgiveness of a debt she would have owed in July of 2004. For tax purposes, both are taxable. Kathy received the full amount of spousal support owed only in a different manner than was anticipated. Additionally, Kathy will continue to receive spousal support in the amount of $6,000 per year for the remainder of the time for which it is ordered, which will be beyond the child's 18th birthday and graduation from high school. Thus, the trial court should have included the full $6,000 in its calculations. The second assignment of error is sustained.
 {¶ 9} The judgment of the Court of Common Pleas of Mercer County is reversed and the matter is remanded for further proceedings.
Judgment reversed and cause remanded.
Shaw, P.J., and Cupp, J., concur.
[1] The trial court did ask Wayne if he had looked for work in other states and was told that Wayne had looked for work in Indiana as well as Ohio.
[2] This is the amount claimed on Kathy's 2002 tax return.
[3] This amount was listed by Kathy on her information form.