OPINION
{¶ 1} Plaintiff-appellant, David A. Chapman, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, amending a previously filed judgment entry decree of divorce. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Plaintiff and defendant-appellee, Tamela J. Chapman, were married on September 12, 1992, and have two children born as issue of the marriage. The parties separated in March 2001, and plaintiff filed for divorce on March 28, 2001. The final *Page 2 
hearing on the matter was held over several days, including May 20, 22, 23, July 15, 23, 29, 30, 31, and August 1, 2003. On July 18, 2004, the trial court issued its judgment entry decree of divorce. Plaintiff appealed from that judgment entry to this court. In the appeal, plaintiff challenged, inter alia, the trial court's imputation of income to plaintiff for purposes of calculating the amount of child support to be paid, as well as its determination that spousal support was not reasonable or appropriate. See Chapman v. Chapman, Franklin App. No. 04AP-812, 2005-Ohio-2801.
 {¶ 3} Regarding the trial court's child support calculation, this court in Chapman determined that the trial court did not explicitly refer to R.C. 3119.01(C)(11) when it imputed income to plaintiff, and further found no indication that the trial court considered any of the factors set forth in R.C. 3119.01(C)(11). See Chapman, at ¶ 12. Accordingly, this court remanded the matter to the trial court in order for it to apply the appropriate statutory factors to determine whether, and in what amount, to impute income to plaintiff. See id.
 {¶ 4} As to the issue of spousal support, this court observed that the trial court specifically stated that it had considered all statutory factors relating to that issue, and that the trial court engaged in a thorough analysis on the issue. See id. at ¶ 21. Upon reviewing the trial court's analysis on the issue, this court disagreed with plaintiff's contention that the trial court had abused its discretion in denying his request for spousal support. See id. However, this court, in view of the limited remand as to the issue of imputed income to plaintiff, also remanded the spousal support issue to the trial court "simply because a change in appellant's imputed income may affect the trial court's determination with respect to the issue of spousal support." Id. at ¶ 22. *Page 3 
 {¶ 5} On October 18, 2005, the trial court filed a judgment entry analyzing the issues remanded by this court. By said entry, the trial court again imputed an income for plaintiff in the amount of $47,000 for purposes of determining child support and again denied plaintiff's request for spousal support.
 {¶ 6} Plaintiff appeals and sets forth the following two assignments of error for our review:
 1. The Trial Court erred and abused its discretion in calculating the amount of child support to be paid by imputing income to the Appellant.
 2. The Trial Court erred and abused its discretion in failing to award spousal support to the Appellant.
 {¶ 7} In his first assignment of error, plaintiff argues that the trial court erred in its calculation of the amount of child support to be paid by imputing income to the plaintiff. Specifically, plaintiff asserts that the trial court erred when it imputed an income for him in the amount of $47,000. Defendant argues that the trial court did not abuse its discretion in determining the amount of income to impute to plaintiff for purposes of calculating child support.
 {¶ 8} A trial court has considerable discretion in the calculation of child support, and, absent an abuse of discretion, an appellate court will not disturb a child support order. Pauly v. Pauly (1997),80 Ohio St.3d 386, 390. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Most instances of an abuse of discretion result in decisions that are unreasonable, as opposed to arbitrary and capricious.AAAA Enterprises, Inc. v. River Place Community *Page 4 Urban Redevelopment Corp. (1990), 50 Ohio St.3d 157, 161. A decision that is unreasonable is one that has no sound reasoning process to support it. Id. In addition, an abuse of discretion will not be found simply because an appellate court could maintain a different opinion were it deciding the issue. Guernsey Bank v. Varga, Franklin App. No. 01AP-1129, 2002-Ohio-3336.
 {¶ 9} For purposes of determining child support, "income" includes the gross income of the parent and any "potential income" of the parent if the parent is voluntarily unemployed or underemployed. See R.C. 3119.01. "Potential income" includes imputed income that the court determines the parent would have earned if fully employed based upon the following criteria outlined in R.C. 3119.01(C)(11)(a):
 (i) The parent's prior employment experience;
 (ii) The parent's education;
 (iii) The parent's physical and mental disabilities, if any;
 (iv) The availability of employment in the geographic area in which the parent resides;
 (v) The prevailing wage and salary levels in the geographic area in which the parent resides;
 (vi) The parent's special skills and training;
 (vii) Whether there is evidence that the parent has the ability to earn the imputed income;
 (viii) The age and special needs of the child for whom child support is being calculated under this section;
 (ix) The parent's increased earning capacity because of experience;
 (x) Any other relevant factor. *Page 5 
 {¶ 10} Consideration of the factors set forth in R.C. 3119.01(C)(11) is mandatory. Bruno v. Bruno, Franklin App. No. 04AP-1381,2005-Ohio-3812, at ¶ 15. A trial court's failure to consider these factors constitutes an abuse of discretion. Id.
 {¶ 11} Plaintiff concedes that the trial court, in its decision, cited R.C. 3119.01(C)(11)(a). However, plaintiff argues that the trial court abused its discretion by failing to consider job opportunities and salary levels in his community when it imputed income to him for child support purposes. Referencing R.C. 3119.01(C)(11)(a)(iv) and (v), plaintiff asserts that no testimony or evidence was presented on the issues of employment availability or the prevailing wage and salary levels in his geographic area. Plaintiff argues that the trial court cannot simply "ignore the fact that there was no evidence provided to indicate job opportunities and salary levels in the community." (Plaintiff's brief, at 11.) Plaintiff contends that the trial court's inability to consider all of the factors of R.C. 3119.01 (C)(11)(a) resulted from defendant's failure to meet her burden of providing evidence on the issue of prevailing wages and opportunities in the community.
 {¶ 12} Plaintiff's argument relies upon the assumption that defendant had the burden of presenting evidence as to each factor set forth in R.C. 3119.01(C)(11)(a), and the failure of defendant to meet that burden precluded the trial court from imputing income to him. However, R.C.3119.01(C)(11)(a) does not provide that evidence must be presented as to each factor in order for the trial court to impute income. Nonetheless, the absence of testimony regarding the employment availability or wage and salary levels in a particular geographic area certainly is a factor a trial court must consider in determining whether, and in what amount, to impute income. See, e.g., Henderson v. Henderson, Mercer App. No. 10-03-20, 2004-Ohio-1856 (finding that the trial court erred in imputing *Page 6 
income because the record contained no evidence concerning the majority of the criteria set forth in R.C. 3119.01[C][11][a], including the party's education level, the availability of employment in the geographic area, the prevailing wage and salary levels, the party's special skills and training, if any, or whether the party has the ability to earn the imputed income). The facts in the case at bar, as cited by the trial court in its analysis of the application of R.C.3119.01(C)(11)(a), provided a sufficient basis for the trial court to impute income in the amount of $47,000 to plaintiff for purposes of determining child support.
 {¶ 13} The facts cited by the trial court in its October 18, 2005 judgment entry included the following. Plaintiff possesses over 15 years of work experience in the signage business. Beginning in the fall of 1983, plaintiff ran the materials department for "Hill Sign Company." In the spring of 1984, plaintiff began installing signs for "Rite-Way Sign Company." Also in 1984, plaintiff and two others started the sign-manufacturing business "Color Text, Inc." ("Color Text"). Plaintiff was an active partner of Color Text until the two other owners of Color Text voted plaintiff out of his job with that business in September 2000. Subsequently, plaintiff formed "Precision Sign Works, Inc." ("Precision"), a sign-manufacturing business. Plaintiff earned an Associates Degree in electrical engineering and was active in the United States Air Force Reserve and Air National Guard for approximately four years. Subsequent to earning the Associates Degree, plaintiff attended The Ohio State University for approximately three years. Plaintiff has been diagnosed with Attention Deficit/Hyperactivity Disorder ("ADHD") and takes medication to treat that disorder. Both children also have been diagnosed with ADHD and take medication to control the disorder. *Page 7 
 {¶ 14} The trial court observed that "[n]o testimony was presented regarding the employment availability or wage and salary levels in Plaintiff's geographic area. However, Plaintiff did testify that he considers himself to be employed full-time at Precision Sign Works and has not sought additional employment in his area." (Oct. 18, 2005 Judgment Entry, at 3.) The trial court further stated: "The signage industry is the only profession in which Plaintiff has ever specialized. His entire adult life has been spent earning experience and income both as an employee and as an owner/operator of sign companies. Based on his work history, the Court finds that Plaintiff possesses a surplus amount of special skills and training within the signage business." Id.
 {¶ 15} The trial court also considered plaintiff's employment separation from Color Text as a pertinent factor in its analysis. In that regard, the trial court cited the trial testimony of Joseph Niedig, one of the three shareholders of Color Text. Mr. Niedig testified that problems began between plaintiff and the other two shareholders after approximately 15 years as business partners. Mr. Niedig testified that plaintiff was not coming to work and was not communicating to the other business partners or the clients. Several shareholder meetings were held to address the situation, and despite certified letters being sent to plaintiff, he did not appear at any of the meetings. Plaintiff informed the business partners that he did not want to be contacted anymore, and he was asked to leave the business in September 2000. According to Mr. Niedig's testimony, plaintiff's actions cost Color Text thousands of dollars. The trial court resolved that Mr. Niedig's testimony supported a finding that plaintiff voluntarily separated from Color Text without regard to the consequences. The trial court further noted that Color Text continues to be *Page 8 
a viable company, and that plaintiff remains a one-third shareholder in the company, even though he no longer works for, or currently receives income from, the company.[1]
 {¶ 16} In addition, the trial court cited evidence regarding plaintiff's income in recent years. Tax returns were presented to the trial court as proof of plaintiff's income with Color Text during 1994 ($31,200), 1995 ($35,100), 1996 ($46,800 plus a $30,000 bonus), and 1997 ($47,700), and plaintiff conceded an income of approximately $46,800 during each of his last three years at Color Text. The trial court reasoned that, although plaintiff earns an uncorroborated average of $18,654 per year at Precision, the evidence supports a conclusion that he has the ability to earn as much as $47,700 per year.
 {¶ 17} Based on its analysis, the trial court imputed an income for plaintiff in the amount of $47,000.
 {¶ 18} Upon review, we cannot conclude that the trial court's analysis regarding imputed income to plaintiff for purposes of computing child support was unreasonable or deficient. The trial court considered the statutory factors and the facts pertinent to those factors, including plaintiff's extensive experience in the signage business, as well as his income with the viable business Color Text before his employment discharge from that business. Regarding plaintiff's primary argument in this appeal, we conclude that the fact that no one testified regarding the prevailing wages and the opportunities in the signage industry in plaintiff's community did not preclude the trial court from imputing income in *Page 9 
the amount of $47,000 to plaintiff for purposes of computing child support, as the above-cited evidence clearly supported that determination.
 {¶ 19} Based on the foregoing, we overrule plaintiff's first assignment of error.
 {¶ 20} By his second assignment of error, plaintiff argues that the trial court erred in not awarding spousal support to him. InChapman, this court did not agree with plaintiff's contention that the trial court's analysis on the issue of spousal support was deficient. See id. at ¶ 21. However, this court noted that the trial court had, pursuant to R.C. 3105.18(C)(1), considered plaintiff's imputed income for purposes of determining whether spousal support would be appropriate and reasonable. See id. at ¶ 22. In view of the limited remand on the issue of plaintiff's imputed income, this court also remanded the issue of spousal support "simply because a change in appellant's imputed income may affect the trial court's determination with respect to the issue of spousal support." Id. Regarding the spousal support issue, the trial court on remand determined:
 Based on the continued finding that Plaintiff remains voluntarily underemployed and the Court's identical imputation of Plaintiff's income at $47,000 per year, the Court's review of the issue of spousal support derives the same result that was previously issued within the Judgment Entry Decree of Divorce. Accordingly, the Court hereby DENIES Plaintiff's request for spousal support and relinquishes jurisdiction to modify this issue.
 {¶ 21} Thus, the trial court, on remand, did not change plaintiff's imputed income. Consequently, the trial court again denied plaintiff's request for spousal support. Plaintiff asserts that if this court determines that the trial court erred in its imputation of income, then the issue of spousal support again must be reconsidered by the trial court. Essentially, plaintiff's second assignment of error is contingent on this court's resolution of *Page 10 
his first assignment of error. In disposing of plaintiff's first assignment of error, we determined that the trial court did not abuse its discretion in its imputation of income and accordingly overruled his first assignment of error. On that basis, we also overrule plaintiff's second assignment of error.
 {¶ 22} Having overruled both of plaintiff's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.
Judgment affirmed.
SADLER, P.J., and BRYANT, J., concur.
[1] Regarding the trial court's reference to his involvement with, and ownership in, Color Text, plaintiff argues in passing that the trial court considered the business interest as an asset in the property division and, therefore, it was error for the court to consider the interest as potential income. Plaintiff asserts that his last full year of employment with Color Text was 1999, and that Mr. Neidig indicated that plaintiff would not be offered a job nor compensated as a partner or owner of the business. However, we find this argument to be unconvincing, as the trial court observed that plaintiff has not made any demand for release of his share of Color Text's assets, and reasonably found that plaintiff is waiting to supplement his income by asserting a claim for his share of Color Text's assets until the final resolution of the divorce proceedings. *Page 1