[Cite as *In re C.R.*, 2024-Ohio-2954.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

IN THE MATTER OF:

C.R.

**CASE NO. 2023-T-0083**

Civil Appeal from the
Court of Common Pleas,
Juvenile Division

Trial Court No. 2022 JC 00054

**O P I N I O N**

Decided: August 5, 2024
Judgment: Affirmed

*Charles A.J. Strader*, Attorney Charles Strader, LLC, 175 Franklin Street, S.E., Warren, OH 44481 (For Appellant, Miranda Seidner).

*James J. Crisan*, Martin F. White Co., LPA, 156 Park Avenue, N.E., P.O. Box 1150, Warren, OH 44482 (For Appellee, Nelson Reep).

*Alissa A. Kegarise*, Amsden Legal, LLC, 1835 Taft Avenue, Niles, OH 44446 (Guardian Ad Litem).

MATT LYNCH, J.

{¶1} Defendant-appellant, Miranda Seidner, n.k.a. Miranda Rheins-Guire, appeals from the judgment of the Trumbull County Court of Common Pleas, Juvenile Division, ordering her to pay child support to plaintiff-appellee, Nelson Reep, and granting legal custody of their child, C.R., to Reep. For the following reasons, we affirm the judgment of the lower court.

{¶2} On June 22, 2022, Reep filed a Complaint seeking a determination that he was the biological father of his minor child, C.R., born in 2016, and a shared parenting plan with Rheins-Guire. The magistrate issued various orders relating to visitation while the matter was pending.

{¶3} On October 14, 2022, Reep filed a motion to order the parties to use Our Family Wizard to communicate, attaching group messages demonstrating that Rheins-Guire would not respond to communications about C.R. unless they were sent to a group message including her husband, Donald Guire. The court ordered that neither parent shall require communication by group messages.

{¶4} Rheins-Guire filed a Motion for Custody on January 25, 2023, stating that it was in the best interest of the child for her to retain custody.

{¶5} A trial was conducted on several days in 2023. The following pertinent testimony was presented:

{¶6} Reep testified that he and Rheins-Guire moved into a home together in 2016. C.R. was born in 2016. While living together, Reep generally got C.R. ready in the morning. Rheins-Guire did limited cleaning. He testified that he moved into his parents' house with C.R. around January 2019 so Rheins-Guire could focus on her studies in a nursing program. C.R. would spend one to two nights per week with her mother. The two subsequently ended their relationship.

{¶7} According to Reep, in May 2022, Rheins-Guire married Guire and Reep became upset that C.R. called Guire, "dad." Rheins-Guire and C.R. moved to Pennsylvania to live with Guire, whose residence was approximately two hours from

2

Reep's. During that time, Reep volunteered at C.R.'s school on Wednesdays to exercise additional visitation with her. Reep testified that there was a meeting at C.R.'s school in Pennsylvania to discuss behavior issues which led to her receiving counseling and medication for ADHD.

{¶8} Reep expressed concern with Rheins-Guire's parenting, stating that she "puts all of her attention and time into her phone or a tablet and is barely available to the outside world." He testified that C.R. was concerned about her mother throwing her personal items away and he believed Rheins-Guire failed to give C.R. presents for her birthday or Christmas. Reep testified that prior to Rheins-Guire's marriage to Guire, C.R. often was not bathed, had dirty clothes, and her hair was not washed after spending time at her mother's residence.

{¶9} Reep testified that Rheins-Guire "threatens my time with [C.R.] a lot as a form of punishment if I wasn't well behaved." When asked about his wishes if he received custody, he stated that Guire "can have her some weekends. I would like to have a weekend here and there to do things outside of school throughout the school year."

{¶10} Shannon Reep, Nelson's sister, testified that she had a strong relationship with C.R. She indicated that, beginning in January 2019, C.R. spent a majority of time at the house where Reep was residing and would see Rheins-Guire on weekends. She believed C.R. was "different" after moving to Pennsylvania and was confused, anxious, and did not want to upset people.

{¶11} Patti Jo Reep, Nelson's mother, testified that Nelson moved in with her in January 2019. She testified that Reep had C.R. every other week, even after C.R. moved

3

Case No. 2023-T-0083

to Pennsylvania in 2022, until Reep filed the present matter and then he only saw her on weekends. She testified that Rheins-Guire did not keep up with C.R.'s hygiene. She opined that C.R. wants constant attention with Reep because she "doesn't get attention" when at her mother's house and Rheins-Guire was always "sitting on her phone."

{¶12} Mark Rheins, Rheins-Guire's brother, testified that he had not seen C.R. neglected. He opined that Rheins-Guire found time to be with her daughter even while working and in school. Shardae Pearson, Rheins-Guire's sister, testified that the condition of Rheins-Guire's home was not concerning, she had no concerns about C.R.'s hygiene, and Rheins-Guire was a present mother.

{¶13} Miranda Rheins-Guire testified that she had been a certified nursing assistant from 2015 until 2019 when she graduated nursing school as an LPN. After C.R. was born, she worked approximately three to four days a week, 12 hours a day. She completed nursing school in June 2019, continued working around three days a week, and dedicated other days to caring for C.R.

{¶14} Around February 2019, Rheins-Guire and Reep terminated their relationship and she requested he leave their home due to arguments. According to her, following the break-up, she had C.R. four days a week and Reep had her for three days. This arrangement remained in place until the end of 2019, after which they did a week on, week off schedule, with her allowing C.R. to also visit with Reep for special events.

{¶15} After Rheins-Guire married Guire, and she and C.R. moved to Pennsylvania in mid-2022, she intended to keep C.R. at their residence during the week and allow Reep to visit on weekends. Rheins-Guire testified that she believed it made sense to have

4

Case No. 2023-T-0083

C.R. live with one parent during the week through the school year. They continued with this schedule until she received court papers in July 2022. She testified that she did not threaten to prevent Reep from visiting with C.R.

{¶16} Rheins-Guire testified that a meeting was held with C.R.'s school in Pennsylvania at the request of her teacher since C.R. had difficulty staying on task and had become disruptive in class. At the recommendation of her school principal, C.R. has been in counseling since that meeting. This was based on her level of stress and emotion at school. She has received treatment for depression and ADHD and Rheins-Guire had noticed modifications in her behavior since she started counseling. Rheins-Guire testified that she did not give Reep authorization to see the counseling records because she wanted these to remain private for C.R.

{¶17} Rheins-Guire testified that she has always been C.R.'s sole legal caretaker and has taken full responsibility for her, playing with her and participating in various activities. She denied any hygiene concerns and testified that C.R. bathes herself and there had not previously been concerns expressed by Reep regarding this issue until the move to Pennsylvania. Rheins-Guire stated that she "would like to reduce the phone calls to once or twice a week and . . . get rid of the Wednesday visitation."

{¶18} The guardian ad litem, Alissa Kegarise, testified that C.R.'s therapist believed she was being coached or talked to about custody by both parents. Kegarise felt Rheins-Guire was "much more hands-off" and that Guire does a significant amount of parenting when C.R. is with them. The Guardian Ad Litem recommended that Reep be

5

named residential parent and legal custodian of C.R. and Rheins-Guire granted companionship two weekends for every one that C.R. is with Reep.

{¶19} A Magistrate's Decision was filed on May 31, 2023. The magistrate made the following pertinent best interest findings: each parent wanted to be designated residential parent, with mother proposing visitation with father on alternating weekends and father proposing mother have two out of every three weekends; C.R. has had more limited interaction with Reep since Rheins-Guire relocated to Pennsylvania, a significant change since she had spent substantial time with both parents previously; C.R. had a strong relationship with her family on both sides; C.R. had some difficulties adjusting to her new home, including suffering stress and being diagnosed with ADHD, although she is doing well in school; the parents have difficulty agreeing on sharing parenting time and the mother expressing midweek companionship time is "inconvenient" although father drives to Pennsylvania to visit with the child; and Reep is more likely to honor court-ordered visitation. The magistrate determined that it was in the best interest of C.R. to allocate parental rights to Reep and establish "a liberal schedule of companionship for the Mother." It recommended that Reep be designated as the residential parent and legal custodian and that Rheins-Guire be granted two weekends of visitation followed by one weekend for Reep. It ordered that Rheins-Guire pay child support in the amount of $154.56 per month. The court issued a Judgment Entry on May 31, 2023, adopting the Magistrate's Decision.

{¶20} Rheins-Guire filed an Objection to Magistrate's Decision, and a subsequent July 21, 2023 Amended Objection. She argued that the factual findings relating to C.R.'s

6

Case No. 2023-T-0083

custody were inconsistent with the evidence and that there was a lack of evidence to permit that income be imputed to her for the purposes of child support. On October 13, 2023, the court issued a judgment denying the objections.

{¶21} Rheins-Guire timely appeals and raises the following assignments of error:

{¶22} "[1.] The trial court committed an abuse of discretion in ordering the Defendant/Appellant to pay child support to the Plaintiff/Appellee, and imputing income to the Defendant/Appellant.

{¶23} "[2.] The trial court committed an abuse of discretion in reallocating parental rights and responsibilities of the minor child and designating the Plaintiff/Appellee as residential parent, and legal custodian, of the minor child."

{¶24} As an initial matter, we note that appellant's counsel raised several issues at oral argument that were not addressed in the appellant's brief, including that minimum wage imputed to Rheins-Guire was based on Ohio's minimum wage rate rather than Pennsylvania's and that documents relied upon in the guardian ad litem's report contained hearsay. "A party may not advance new arguments for the first time at oral argument." *State v. Snider*, 2022-Ohio-4566, ¶ 25 (11th Dist.); *Hughes v. Hughes*, 2020-Ohio-4653, ¶ 19 (10th Dist.) (a party may not raise "an argument for the first time at oral argument, particularly when the party had ample opportunity to explore such issues in its brief"). For this reason, we decline to address these arguments.

{¶25} In her first assignment of error, Rheins-Guire argues that the court made various errors in awarding child support, including that its determination she was voluntarily unemployed was not supported by the evidence. Reep argues that Rheins-

7

Guire's testimony supported the court's findings.

{¶26} "Absent an abuse of discretion, a trial court's determination regarding child support obligations will not be disturbed on appeal." *Haun v. Haun*, 2019-Ohio-5408, ¶ 7 (11th Dist.), citing *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997). "[T]he term 'abuse of discretion' is one of art, essentially connoting judgment exercised by a court which neither comports with reason, nor the record." (Citation omitted.) *Shorts v. Shorts*, 2008-Ohio-2317, ¶ 13 (11th Dist.). An abuse of discretion is the court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2010-Ohio-1900, ¶ 62 (2d Dist.), quoting *Black's Law Dictionary* (8th Ed. 2004).

{¶27} "In any action in which a court child support order is issued . . . the court or agency shall calculate the amount of the parents' child support and cash medical support in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of Chapter 3119. of the Revised Code." R.C. 3119.02. "When calculating child support, the trial court must first determine the annual gross income of each parent," including the gross and potential income "of a parent the court determines to be voluntarily unemployed or underemployed." *Lake Cty. Dept. of Job and Family Servs. v. Bailey*, 2020-Ohio-986, ¶ 25 (11th Dist.); *Rock v. Cabral*, 67 Ohio St.3d 108, 111 (1993). "Potential income" includes income, imputed to the parent, which would have been earned, if the court determines that parent is "voluntarily unemployed or voluntarily underemployed." R.C. 3119.01(C)(18)(a). "Whether a parent is 'voluntarily underemployed' within the meaning of [the statute], and the amount of 'potential income' to be imputed to a child support obligor, are matters to be determined by the trial court

8

based upon the facts and circumstances of each case." *Rock* at syllabus.

**{¶28}** "Imputed income that the court or agency determines the parent would have earned if fully employed" is determined from criteria including, inter alia, the parent's prior employment experience, education and training; the parent's physical or mental disabilities; availability of employment and wages in the area where the parent resides; the ability of the parent to earn the imputed income; the age and special needs of the child; increased earning capacity due to experience; and any other relevant factor. R.C. 3119.01(C)(18)(a)(i)-(xi).

**{¶29}** As an initial matter, Rheins-Guire argues that the trial court made "no specific finding that [she] was voluntarily unemployed."

**{¶30}** This court has held that "[a] trial court must expressly find that a parent is voluntarily underemployed or unemployed before imputing income." *Byers v. Cartechine*, 2017-Ohio-9334, ¶ 26 (11th Dist.). It has also noted, however, "there is no 'magic language' requirement in making th[e] finding" before imputing income for child support purposes. *Winkelman v. Winkelman*, 2008-Ohio-6557, ¶ 22 (11th Dist.).

**{¶31}** The Ohio Supreme Court recently addressed this issue in *Ayers v. Ayers*, 2024-Ohio-1833. It held that "the domestic-relations court must expressly find that a parent is voluntarily unemployed or underemployed as a condition precedent to imputing potential income for child-support-calculation purposes." *Id.* at ¶ 27. However, the trial court is not required to include "a recitation of particular words." *Id.* at ¶ 23. "The precise wording is . . . inconsequential, but the domestic-relations court's order must clearly evince a finding that a parent's unemployment or underemployment is voluntary." *Id.*

9

{¶32} While the court did not explicitly use the phrase "voluntarily unemployed," there is no question that this is what the court found. The lower court found that, although Rheins-Guire had a LPN certification, she "is choosing not to work currently," i.e., voluntarily deciding not to work, and that there was no evidence that she could not work, again showing the voluntary nature of her unemployment. This was sufficient to demonstrate the lower court made a finding that Rheins-Guire was voluntarily unemployed. *Winkelman* at ¶ 22 ("[i]mplicit in [the court's factual findings regarding the lack of employment] is the finding that [the parent] is presently voluntarily underemployed").

{¶33} Rheins-Guire also argues that the lower court erred in finding her voluntarily unemployed since "there was no evidence that was presented that [her LPN] certification was still valid, as Ohio requires said certifications to be renewed every two (2) years, as does the State of Pennsylvania."

{¶34} At the trial, Rheins-Guire was asked "you're now a licensed LPN in the State of Ohio?" to which she responded in the affirmative. She also testified: "I filed the paperwork necessary to transfer my license from Ohio to Pennsylvania." Based on the information presented to the court, it appears she had a current license at the time of the trial. It is not relevant whether it has since expired since the court must base its decision upon the testimony before it. Further, even presuming that she had not renewed her license, this alone would not prevent a finding that she was voluntarily unemployed as there is nothing in the record to indicate why her license could not be renewed. *See Drucker v. Drucker*, 2000 WL 739520, *2 (8th Dist. June 8, 2000) (appellant was found to

10

be voluntarily unemployed where he lacked a license to practice law in Florida, since "the record does not reflect any reason appellant could not have become licensed to practice law in Florida" and his voluntary failure to obtain such license did not "support a finding that his unemployment was involuntary").

{¶35} Rheins-Guire also argues that the record does not contain evidence regarding the availability of jobs in her area, the rate of pay for such jobs, or that she is able to work a full-time job at minimum wage.

{¶36} As to Rheins-Guire's ability to work a full-time job, she testified that she had worked both as a nursing assistant and then an LPN in the years immediately preceding her marriage to Guire and that she had worked three to four days per week, 12 hours a day, which would constitute full-time work. There was nothing in the record to indicate an inability to do so at this time. We find no abuse of discretion in determining that she is capable of full-time work.

{¶37} It is accurate that there was no evidence presented as to the availability of current positions in the nursing field in her area or the rate of pay for such jobs. While there was no evidence as to rate of pay, the court imputed minimum wage and a determination as to prevailing wages in the nursing profession would not have decreased the amount of support owed.

{¶38} As to the lack of evidence on the availability of jobs, Reep contends it is common knowledge that there are nursing jobs available throughout the country, although the trial court did not make a finding on this issue. Nonetheless, we observe that while consideration of the R.C. 3119.01(C)(18) factors is required to impute income, *Huth v.*

11

*Huth*, 2019-Ohio-2970, ¶ 33 (11th Dist.), it has been held that "the statute does not require evidence be presented as to each factor before the court may impute income." *Yenni v. Yenni*, 2022-Ohio-2867, ¶ 32 (8th Dist.); *Chapman v. Chapman*, 2007-Ohio-1414, ¶ 12 (10th Dist.) (the law does not require that "evidence must be presented as to each factor in order for the trial court to impute income"). It has been held that the trial court's decision to impute income is supported by a sufficient basis where there was evidence regarding the father's prior work experience, income, education, and mental health concerns, even where there was no testimony regarding the prevailing wages and employment opportunities in his industry. *Chapman* at ¶ 12-18 (observing that "the absence of testimony regarding the employment availability or wage and salary levels in a particular geographic area . . . is a factor a trial court must consider in determining whether, and in what amount, to impute income"). Here, while there was no testimony about the availability of employment and wages in Pennsylvania, this does not preclude the court from imputing income, as it had evidence on several other factors including Rheins-Guire's work history and education. Further, as noted above, it imputed only minimum wage, likely taking into account the lack of testimony on the prevailing wages in her field. We find no abuse of discretion in imputing to Rheins-Guire an income of $21,008 given the field in which she works and her experience.

{¶39} The first assignment of error is without merit.

{¶40} In her second assignment of error, Rheins-Guire argues that the trial court abused its discretion in allocating parental rights and responsibilities and the evidence did not support its decision, arguing that the decision "appears to be nothing more than

12

Case No. 2023-T-0083

the trial court preferring the Plaintiff/Appellee over Defendant/Appellant."

**{¶41}** "The trial court's judgment involving the allocation of parental rights and responsibilities will not be disturbed absent a showing of an abuse of discretion." *Ruff v. Ruff*, 2023-Ohio-2349, ¶ 62 (11th Dist.). "'This court, as well as the Supreme Court of Ohio, has held that decisions involving the custody of children are within the discretion of the trial court and accorded great deference on review.'" *Id.*, citing *Ash-Holloway v. Holloway*, 2022-Ohio-4248, ¶ 8 (11th Dist.). Because the trial court is in the best position to observe the witnesses and parties, "the reviewing court . . . should be guided by the presumption that the trial court's findings were indeed correct." *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988).

**{¶42}** "When making the allocation of the parental rights and responsibilities for the care of the children . . . the court shall take into account that which would be in the best interest of the children." R.C. 3109.04(B)(1). "In determining the best interest of a child . . . the court shall consider all relevant factors," including "[t]he wishes of the child's parents regarding the child's care"; "[t]he child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest"; "[t]he child's adjustment to the child's home, school, and community"; "[t]he mental and physical health of all persons involved"; "[t]he parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights"; and "[w]hether either parent has established a residence . . . outside this state." R.C. 3109.04(F)(1)(a), (c)-(f), and (j).

**{¶43}** In the present matter, the magistrate outlined the reasons for the

13

determination of parental rights, addressing each of the best interest factors. Particularly relevant to its custody determination in this matter, the magistrate found that C.R. has had changes in her life from the move to Pennsylvania and had disruption from the change in her ability to see her father and that Rheins-Guire is less likely to facilitate parenting time. Further, it noted concerns with allowing Reep additional visitation time during the school year.

{¶44} Rheins-Guire argues that the court failed to use updated information relating to the child's relationships since the move to Pennsylvania and failed to consider evidence that she fostered relationships on both sides of the family. The Magistrate's Order specifically recognizes the move to Pennsylvania and how it has impacted C.R.'s relationships. Consistent with the testimony of Rheins-Guire and Reep, it found that C.R. previously spent significant time with both parents and that Reep is now limited to weekends and midday visits. Such a conclusion was not inconsistent with Rheins-Guire's expressed desire that C.R. stay with her during the week while in school. The magistrate properly recognized that C.R. has relationships with relatives on all sides, a fact not changed by the move. The magistrate's decision did not rely on outdated facts; it merely discussed the prior time C.R. spent with each parent to show the contrast in time that is now available to Reep and how this impacted C.R.'s relationship with him. It is also worth noting that the testimony demonstrated that relatives with which C.R. has a strong relationship reside in Ohio rather than Pennsylvania. While Rheins-Guire argues that the court failed to take into account evidence that she fostered relationships on both sides, it accurately stated the evidence relating to C.R.'s interactions with and availability to her

14

various relatives.

{¶45} Rheins-Guire also argues that, contrary to the magistrate's finding, there was no testimony that C.R. had difficulties adjusting to her new home and issues relating to her new school were addressed through counseling facilitated by Rheins-Guire. The magistrate found that C.R. had difficulty adjusting to her new home and school. There was ample testimony regarding the fact that C.R. had behavioral concerns warranting intervention by her teacher and principal which came about after the move to Pennsylvania. In addition, while Rheins-Guire argues that the magistrate was mistaken in finding that C.R. had difficulty adjusting to her new home, Patti Reep testified that after the move, C.R. sought "reassurance of love" and seeks "constant attention," and Rheins-Guire testified that C.R. had "been very stressed out" and emotional, inquiring about when she would see her father. These were relevant considerations in her ability to adjust to the move and her home life.

{¶46} Rheins-Guire argues that the lower court "appears to be making assumptions about what is contained within the counseling records," observing it made a statement that Rheins-Guire knew C.R. told the therapist she was uncomfortable with Reep, which was contrary to her assertion she did not look at therapy records. She contends that she could have obtained this information in other ways. Even if Rheins-Guire's argument is accurate, this did not have any bearing on the outcome of this case, as whether Rheins-Guire looked at the therapy records was not cited as a justification for the decision on custody.

{¶47} Rheins-Guire also contends that the court could not make any findings in

15

reliance on the contents of the counseling records in its decision since they were not in the record. Further, it could not consider any statements made in the guardian ad litem's report in reliance on counseling records since the "Guardian ad Litem report that was submitted would not be able to be considered by the trial court, since [it] was not admitted as evidence by either party." However, the magistrate did not cite counseling records as justification for the decision, but instead merely observed that C.R. received counseling, had been stressed out, and received treatment for ADHD. Additionally, a review of the guardian ad litem report reveals no specific references to the counseling records apart from noting the facts of her receiving counseling and ADHD medication.

**{¶48}** Nonetheless, any argument that the court could not rely on the guardian ad litem report because it was not admitted as evidence lacks merit. Courts have held that, while Sup.R. 48.06(C)(2) provides that "[t]he court shall consider the recommendation of the guardian ad litem in determining the best interest of the child only when the report . . . has been admitted as an exhibit," this is only a guideline and, where the parties had access to the report prior to trial, were aware of the guardian's recommendation, and had the opportunity to cross-examine the guardian, the report could be considered by the court. *In re D.C.J.*, 2012-Ohio-4154, ¶ 51 (8th Dist.). Here, the GAL report was filed prior to trial on January 17, 2023, counsel for both parties cross-examined the GAL, and Rheins-Guire's counsel's questioning showed he was clearly aware of the contents of the report as well as the recommendation made. We find no reason the court could not consider any of its contents. Further, while Rheins-Guire argues that the court did not inquire of the guardian ad litem regarding various issues, there was significant cross-

16

examination of the guardian ad litem which demonstrated the basis for her recommendation.

{¶49} Finally, Rheins-Guire argues that there is "nothing in the record that states that the minor child is not being cared for by the Defendant/Appellant, there is nothing in the records that states that the best interest of the minor child was served by custody being awarded to the Plaintiff/Appellee." The court decided the allocation of parental rights, not a modification, and, even presuming that Rheins-Guire properly cared for her daughter and could be an appropriate legal custodian, the court had to take into account all of the circumstances and determine how parental rights would be best allocated given their ability to facilitate visitation as well as the distance between the two parents' homes. Rheins-Guire's ability to be a suitable custodian does not render the court's decision an abuse of discretion and the appellate court is not to substitute its judgment for that of the trial court.

{¶50} The second assignment of error is without merit.

{¶51} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, Juvenile Division, is affirmed. Costs to be taxed against appellant.


MARY JANE TRAPP, J.,

ROBERT J. PATTON, J.,

concur

17

Case No. 2023-T-0083