**[Cite as *J.E.S. v. A.S.*, 2026-Ohio-458.]**

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | |
|---|---|
| J.E.S., | : |
| Plaintiff-Appellee, | : |
| | : No. 115183 |
| v. | : |
| A.S., | : |
| Defendant-Appellant. | : |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 12, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-19-375930

---

### *Appearances:*

Rosenthal│Lane, LLC, Scott S. Rosenthal, and James L. Lane, *for appellee.*

Stafford Cruz Law Company and Kelley R. Tauring, *for appellant.*

MARY J. BOYLE, P.J.:

{¶ 1} In this companion appeal, defendant-appellant A.S. ("Husband") appeals the trial court's decision regarding child support and spousal support

following our remand in *J.S. v. A.S.*, 2024-Ohio-6015 (8th Dist.) ("*J.S. I*").[1]

Husband raises two assignments of error for review:

> **Assignment of Error One:** The trial court erred as a matter of law by issuing the April 30, 2025 and May 29, 2025 judgment entries while divested of subject matter jurisdiction pending [Husband]'s appeal to the Ohio Supreme Court.
>
> **Assignment of Error Two:** The trial court erred as a matter of law and abused its discretion by calculating [Wife's] income for support purposes and imputing her income of minimum wage.

{¶ 2} For the reasons set forth below, we affirm.

## I. Facts and Procedural History

{¶ 3} The facts of this case were previously set forth by this court in *J.S. I* as follows:

> Wife and Husband were married on August 31, 2003, and they had three children born as issue of the marriage. Wife filed a complaint for divorce on March 18, 2019. The trial court placed a mutual restraining order that, in part, prohibited the parties from withdrawing funds from various joint or individual accounts, including trusts. Husband filed a complaint for divorce on March 21, 2019. The trial court ultimately consolidated the two cases under Wife's case number and designated Husband's complaint as a counterclaim for divorce.
>
> . . .
>
> The bench trial in the matter commenced on April 19, 2021, and . . . [ultimately] concluded in June 2023.
>
> . . .
>
> During the trial, Wife testified that she stopped working after the birth of their first child in 2005. Husband worked several jobs during the marriage and had a period of unemployment after being laid off. Towards the end of the marriage after the divorce began, Husband

---

[1] This appeal is a companion to plaintiff-appellee J.S.'s ("Wife") appeal, *J.S. v. A.S.*, 8th Dist. Cuyahoga No. 115184. We only address Husband's appeal herein.

obtained a position with a salary of $94,500 per year. During the marriage, B.T., Wife's father, supplemented the couples' income. The trial court ultimately found:

The evidence clearly shows that [Wife] has made substantial financial contributions to the family for the entirety of the marriage despite not being employed or earning an income. There have also been many issues related to the discovery process on these issues that extended well into trial.

[Wife] has maintained throughout the trial that she has no income and, at best, should be imputed at the minimum wage. The Court does not find this testimony to be credible. This approach would yield an outcome that is inconsistent with R.C. 3119.01 and is fundamentally inequitable. This argument is also concerning considering [Wife's] testimony as to her self-reported household expenses which did not include the entirety of her household or personal expenses. [Wife's] own testimony showed that she had approximately $359,000.00 available to her through her father, [B.T.]. Furthermore, [Wife's] own testimony showed that she is enjoying a lifestyle that is well out of reach for someone making the minimum wage, which [Wife] argues that she should be imputed to for support purposes. Accordingly, the Court finds that [Wife's] income for the support purposes is approximately $359,000.00 and could possibly be more than that amount.

June 30, 2023 Divorce Decree

Included in that amount were monthly expenses of $14,736.08 reported by Wife in her final financial disclosure statement and monthly expenses for the marital home of $3,167.88 (total: $214,847.52/year); the yearly value of two prepaid three-year vehicle leases that B.T. paid for Wife and the parties' oldest daughter (total $18,000), and approximately $125,000 in attorney fees over a one-year period. The court ordered Wife to pay Husband spousal support in the amount of $4,600 per month for a term of 72 months.

. . .

The court ordered that Husband would be entitled to claim the children as dependents for federal income tax purposes. The court ordered Wife to pay child support to Husband in the amount of $3,334.11 per month ($1,316.61 per month per child) plus cash medical support of $74.36 per month ($25.72 per month per child) (total: $3,476.64 per month).

The court also ordered the parties to split the GAL's fees, with Wife paying 75 percent and Husband paying 25 percent.

*Id.* at ¶ 2, 5, 9-10, 12.

**{¶ 4}** On appeal, both parties challenged the trial court's support orders. We found that "while the trial court acknowledged that Wife was unemployed since 2005, the record does not reflect that the court tied its income calculation to Wife's education, salary, or any other factor that would determine her income potential. Certainly, there was no evidence in the record that Wife could earn $359,000 per year." *Id.* at ¶ 65. We deferred to the trial court's finding on Wife's credibility, but nevertheless, found that "there was no evidence that Wife had any source of income in her own name." *Id.* at ¶ 66. As a result, we concluded that the spousal support award was unreasonable and an abuse of discretion. *Id.* With regard to the child support award, we held that the "trial court abused its discretion when it found Wife had an income of $359,000 for child support." *Id.* at ¶ 69.

**{¶ 5}** In reaching our conclusion, we noted that the trial court improperly shifted the responsibility of support to a nonparty who had no legal obligation to support either party by classifying B.T.'s gifts as income. *Id.* at ¶ 70. Therefore, we reversed the trial court's judgment in part and remanded the case for the trial court to "recalculate spousal and child support to make the awards equitable and just[.]" *Id.* at ¶ 95.

**{¶ 6}** Following our decision, Husband filed a motion for reconsideration, which was denied by this court on January 22, 2025. Then on March 10, 2025,

Husband filed an appeal to the Ohio Supreme Court and a memorandum in support of jurisdiction. A review of the Ohio Supreme Court's docket indicates the Court declined jurisdiction on May 27, 2025.[2] *J.S. v. A.S.*, Ohio Supreme Court No. 2025-0344; *see also 05/27/2025 Case Announcements*, 2025-Ohio-1846.

{¶ 7} Meanwhile, on April 30, 2025, the trial court issued a judgment entry regarding support after the reversal and remand. Wife filed a Civ.R. 60(B) motion for relief from judgment on May 14, 2025, contending that the April 30 judgment entry contained conflicting orders. The trial court then issued an amended judgment entry on May 29, 2025, "supersed[ing] the Judgment Entry dated April 30, 2025." (Amended judgment entry, May 29, 2025.) In this amended entry, the court found that Wife was voluntarily underemployed and imputed minimum wage. The court determined that Husband's income for support purpose was $93,000 and Wife's income was minimum wage or $22,256. The court also found that neither party shall pay spousal support. The court further found that Husband was the child support obligor and ordered him to pay $762.50/month as child support, plus a 2 percent processing charge, retroactive to July 1, 2023. The amended judgment entry was issued two days after the Ohio Supreme Court declined jurisdiction.

{¶ 8} Husband now appeals, raising two assignments of error for review.

---

[2] A court may take notice of a court docket that is publicly available on the internet. *State ex rel. Everhart v. McIntosh*, 2007-Ohio-4798, ¶ 8.

## II. Law and Analysis

{¶ 9} In the first assignment of error, Husband contends the trial court did not have jurisdiction to issue the April 30, 2025 and May 29, 2025 judgment entries because the matter was pending before the Ohio Supreme Court and the trial court was divested of jurisdiction over matters that were inconsistent with the Ohio Supreme Court's jurisdiction to reverse, modify, or affirm the judgment. According to Husband, the Ohio Supreme Court did not decline jurisdiction until June 9, 2025. Wife argues Husband is incorrect because the Ohio Supreme Court docket indicates that the Court declined jurisdiction on May 27, 2025, not June 9, 2025. And because the trial court vacated its April 30, 2025 judgment entry and issued its subsequent amended judgment entry two days after the Ohio Supreme Court declined jurisdiction, the trial court had jurisdiction to issue its May 29, 2025 judgment entry.

{¶ 10} While we agree with Husband for the general proposition that "once an appeal is perfected, the trial court is divested of jurisdiction over matters that are inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment," we find Wife's argument more persuasive. (Husband's brief, p. 6, citing *State ex rel. Electronic Classroom of Tomorrow v. Cuyahoga Cty. Court of Common Pleas*, 2011-Ohio-626, and *Black v. Hicks*, 2018-Ohio-2289 (8th Dist.)).[3]

---

[3] We note that "'[t]he question of subject-matter jurisdiction is a question of law, subject to a de novo review on appeal.'" *In re Guardianship of Lieber*, 2020-Ohio-5625, ¶ 5 (8th Dist.), quoting *Cuyahoga Cty. Bd. of Cty. Commrs. v. Daroczy*, 2008-Ohio-5491, ¶ 4 (8th Dist.).

{¶ 11} Husband maintains that the Ohio Supreme Court declined jurisdiction in this matter on June 9, 2025, which is the date the Court's "mandate" was docketed with this court and the trial court. In support of his argument, Husband cites to S.Ct.Prac.R. 18.04(A), which provides

> The Supreme Court's mandate is a certified copy of the Supreme Court's judgment. *After the Supreme Court has decided an appeal on the merits, the Clerk of the Supreme Court shall issue a mandate.* The Clerk shall issue the mandate ten days after the judgment entry is filed, unless within that time a party files a motion for reconsideration or a motion to stay execution of the Supreme Court's judgment.

(Emphasis added.) Husband's reliance on this section, however, is misplaced.

{¶ 12} A plain reading of S.Ct.Prac.R. 18.04(A) reveals that it applies when the Court has decided an appeal on the merits. That is not what occurred in this case. Rather, the Court refused to accept a jurisdictional appeal, not decide the appeal on the merits. In this situation, S.Ct.Prac.R. 18.04(D) applies, which states: "**No mandate for refusal to accept jurisdiction**[.] No mandate shall be issued on the Supreme Court's refusal to accept a jurisdictional appeal." (Emphasis in original.) Thus, based on the foregoing, no mandate was required and May 27, 2025, the day the decision was issued, guides us.

{¶ 13} A review of the docket reveals that the Court declined jurisdiction on May 27, 2025, and issued its decision the same day. The Court stated: "Upon consideration of the jurisdictional memoranda filed in this case, the court declines to accept jurisdiction of the appeal pursuant to Rule 7.08(B)(4). (Cuyahoga County Court of Appeals; Nos. 112963, 112997, and 113007)" (Entry, May 27, 2025; *see also*

2025-Ohio-1846 ("appeals not accepted for review").) Here, the trial court issued its amended judgment entry on May 29, 2025, which superseded its April 30 judgment entry, and was two days after the Ohio Supreme Court's decision. Therefore, we find that the trial court had jurisdiction to proceed with the case following the Ohio Supreme Court's decision to decline Husband's jurisdictional appeal on May 27, 2025, and issue the May 29, 2025 amended judgment entry.

{¶ 14} Therefore, the first assignment of error is overruled.

{¶ 15} In the second assignment of error, Husband argues that the trial court abused its discretion by imputing Wife's income of minimum wage for support purposes.

{¶ 16} We review the propriety of the trial court's determinations in a domestic relations case under an abuse-of-discretion standard. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). A trial court abuses its discretion when it exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 17} Husband contends that this court should not ignore the fact that Wife receives money from her father, B.T. In support of his contention, he references the gifts Wife received from B.T., the money Wife receives from B.T. for her monthly expenses, and the money in B.T.'s trust account that Wife receives as a beneficiary. Husband maintains that these gifts should be considered as income to Wife. Wife counters that these gifts cannot be considered because this court previously decided

in *J.S. I*, 2024-Ohio-6015 (8th Dist.), that the gifts from Wife's father are not income to Wife. We agree with Wife.

{¶ 18} Under the law-of-the-case doctrine, the trial court and this court are prevented from considering father's gifts to Wife when determining Wife's income. The law-of-the-case doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). This rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution. *Id.* Therefore, because we already rejected Husband's position that B.T.'s gifts and the money in B.T.'s trust accounts were income to Wife in *J.S. I*, our discussion will focus on whether the trial court abused its discretion in imputing minimum wage income to Wife for the purposes of support without considering the gifts from Wife's father. *Id.* at ¶ 62-74. We find that it did not.

{¶ 19} As we stated in *J.S. I*, with respect to spousal support:

While there is no formula to determine the amount of spousal support, the trial court is required "to consider all 14 factors of R.C. 3105.18(C) and 'not base its determination upon any one of those factors taken in isolation.'" *Id.* at ¶ 60.

The record does not reflect that the trial court considered all of the factors in R.C. 3105.18(C). R.C. 3105.18(C) requires the court to consider

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

*Id.* at ¶ 63.

{¶ 20} On remand, the trial court found, upon considering all the factors set forth in R.C. 3105.18(C)(1), that spousal support is neither appropriate nor reasonable. The court stated:

> One of the most significant issues in this matter was [Wife's] income. The evidence clearly shows that the [Wife] has made substantial financial contributions to the family for the entirety of the marriage despite not being employed or earning an income. There have also been many issues related to the discovery process on these issues that extended well into trial.
>
> [Wife] has maintained throughout the trial that she has no income and, at best, should be imputed at the minimum wage. [Wife] testified as to her self-reported household expenses which did not include the entirety of her household or personal expenses. [Wife's] own testimony showed that she had approximately $359,000.00 available to her through her father, [B.T.]. The Court does not find [Wife's] testimony credible.
>
> Based on [Wife's] testimony, education, work history and potential employment, the Court finds that [Wife] is voluntarily underemployed. Therefore, the Court shall impute [Wife] to minimum wage.
>
> The Court has considered the factors under R.C. §3105.18(C), including the parties' respective incomes and potential employment, education, retirement accounts and the standard of living of the parties. In addition, the Court has considered all other relevant factors including the fact that [Wife] receives support from [B.T.].
>
> When considering whether there should be a spousal support obligation by either party, despite [Wife] being unemployed she has support from [B.T.] and her own testimony showed that she is enjoying a lifestyle that is well out of reach for someone making minimum wage.
>
> . . .
>
> The Court finds that the following factors support this award: the standard of living of the parties established during the marriage; the income and earning potential of the parties; all other relevant factors including other financial resources, and the relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties.

(Amended judgment entry, May 29, 2025.)

{¶ 21} While Wife may have had access to $359,000 available to her through gifts from B.T., the record is clear that Wife was never employed throughout the duration of the marriage. As directed by this court, the trial court considered the other evidence in the record, including Wife's testimony; education; work history and potential employment; the standard of living of the parties established during the marriage; the income and earning potential of the parties and all other relevant factors, including other financial resources; and the relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties.

{¶ 22} Based on this evidence, the court concluded that Wife is voluntarily underemployed and imputed $22,256 as minimum wage income to Wife. The trial court recognized there was no evidence that Wife had any source of income in her own name. The trial court's decision to impute a minimum wage income to Wife was neither unreasonable or arbitrary. Therefore, we find that the trial court did not abuse its discretion in imputing $22,256 as minimum wage income to Wife and declining to award spousal support.

{¶ 23} Next, we consider the court's decision to impute the minimum wage income of $22,256 to Wife for purposes of child support. Husband argues the trial court abused its discretion when it imputed the minimum wage income to Wife and ordered him to pay child support to Wife, asking us again to consider the gifts Wife received from B.T. when calculating Wife's income. As we stated above, we decline to consider the evidence that we found the trial court incorrectly relied on in *J.S. I.*

{¶ 24} In order to compute an obligor's spousal support obligations, a trial court must determine the annual income of each parent. R.C. 3119.05(A). "Income" is defined under R.C. 3119.01(C)(10) to mean either of the following:

> (a) For a parent who is employed to full capacity, the gross income of the parent;
>
> (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.

{¶ 25} "Pursuant to R.C. 3119.01(C)(9)(b) and 3119.01(C)(18)(a), the trial court is permitted to impute potential income to a parent who is voluntarily unemployed or voluntarily underemployed for the purpose of determining the parent's child support obligation." *N.W. v. M.W.*, 2019-Ohio-1775, ¶ 29 (8th Dist.). Furthermore, "[w]hether a parent is voluntarily underemployed and the amount of potential income to be imputed to the parent for the calculation of child support are matters the trial court determines on the particular facts and circumstances of each case." *Id.* at ¶ 29, citing *Rock v. Cabral*, 67 Ohio St.3d 108 (1993), syllabus. And the "parent who claims the other parent is voluntarily underemployed has the burden of proof." *Id.*, citing *id.* We note that the trial court's decision to impute income will be overturned only upon a showing of an abuse of discretion. *Rock* at 112.

{¶ 26} To determine the potential income for a parent who the court finds is voluntarily unemployed or voluntarily underemployed, the court assesses the following factors:

> (i) The parent's prior employment experience;
>
> (ii) The parent's education;

(iii) The parent's physical and mental disabilities, if any;

(iv) The availability of employment in the geographic area in which the parent resides;

(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi) The parent's special skills and training;

(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

(viii) The age and special needs of the child for whom child support is being calculated under this section;

(ix) The parent's increased earning capacity because of experience;

(x) The parent's decreased earning capacity because of a felony conviction;

(xi) Any other relevant factor.

R.C. 3119.01(C)(18)(a).

{¶ 27} In this case, the trial court imputed to Wife a minimum wage annual income of $22,256, finding that there was no evidence that Wife had any source of income in her own name. The court found the testimony established that Wife is voluntarily underemployed based upon her education, work history, and potential employment. Notably, other than referring to the gifts Wife received from her father, which we previously found was improper for the trial court to consider, Husband can point to no evidence of Wife's income.

{¶ 28} Thus, considering the foregoing and our findings in *J.S. I*, the trial court's conclusion that Wife was voluntarily underemployed and imputing an annual minimum wage income of $22,256 was not an abuse of discretion. While

the record may be silent as to some of the R.C. 3119.01(C)(18)(a) factors, some of these factors are not applicable and "the statute does not require evidence be presented as to each factor before the court may impute income." *In re K.F.*, 2025-Ohio-174, ¶ 31 (8th Dist.), citing *Chapman v. Chapman*, 2007-Ohio-1414, ¶ 12 (10th Dist.).

{¶ 29} Accordingly, the second assignment of error is overruled.

{¶ 30} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
DEENA R. CALABRESE, J., CONCUR